UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDGAR MURILLO-CHAVEZ,<br><br>      Petitioner,<br><br>  v.<br><br>MERRICK B. GARLAND, *et al*.,<br><br>      Respondents. | Case No. C22-303-LK-MLP<br><br>REPORT AND RECOMMENDATION |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Edgar Murillo-Chavez is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking to obtain release from detention or a bond hearing. (Pet. (Dkt. # 6).) The Government has filed a return memorandum and motion to dismiss (Gov.'s Mot. (Dkt. # 10)) which is currently ripe for review. Petitioner has not filed any response to the Government's motion to dismiss. The Court, having considered the parties' submissions, the balance of the record, and the governing law, concludes that the Government's motion to dismiss (dkt. # 10) should be granted, and Petitioner's federal habeas petition (dkt. # 6) should be denied.

REPORT AND RECOMMENDATION
PAGE - 1

## II.    BACKGROUND

Petitioner, a native and citizen of Mexico, was born in 1993 and entered the United States without inspection on or about March 1996. (Sica Decl. (Dkt. # 12), ¶ 4; Vick Decl. (Dkt. # 11), Exs. A, B (Dkt. ## 11-1, 11-2).) On March 30, 2006, Department of Homeland Security ("DHS") officers encountered Petitioner at the Juvenile Department in Marion County, Oregon, where he was in custody pending adjudication of delinquency charges. (Sica Decl., ¶ 5.) On August 8, 2006, Petitioner was found guilty on two counts of sodomy in the first degree and two counts of sex abuse in the first degree. (Sica Decl., ¶ 5; Vick Decl., Ex. D (Dkt. # 11-4).) The charges related to sexual abuse Petitioner perpetrated against his two sisters who were two and eight years old at the time of the offenses. (Sica Decl., ¶ 5; Vick Decl., Ex. C (Dkt. # 11-3).)

On August 10, 2006, ICE took Petitioner into custody and served him with a Notice to Appear ("NTA"), charging him with removability under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1182(a)(6)(A)(i)). (Sica Decl., ¶ 6; Vick Decl., Ex. B.) On August 30, 2010, U.S. Citizenship and Immigration Services ("USCIS") approved a Special Immigrant Juvenile petition filed by Petitioner and, as a result, the pending removal proceedings were thereafter terminated. (Sica Decl., ¶ 7.) On May 27, 2011, Petitioner's status was adjusted to that of a lawful permanent resident. (Sica Decl., ¶ 8.)

In January 2016, Petitioner was charged in the Circuit Court of the State of Oregon, Linn County, with unlawful possession of a firearm in violation of Or. Rev. Stat. § 166.250(1)(b), a misdemeanor offense. (*See* Vick Decl., Ex. E (Dkt. # 11-5).) Petitioner entered a no contest plea to the charge and, on April 19, 2016, he was sentenced to 24 months of probation. (Sica Decl., ¶ 9; Vick Decl., Ex. E.) In 2018, Petitioner was charged in the Circuit Court of the State of Oregon, Marion County, with the following felony offenses: (1) assault in the third degree in

violation of Or. Rev. Stat. § 163.165(2)(a); (2) criminal mistreatment in the first degree in violation of Or. Rev. Stat. § 163.205; and (3) unlawful use of a weapon in violation of Or. Rev. Stat. § 166.220. (*See* Sica Decl., ¶ 10; Vick. Decl., Ex. F (Dkt. # 11-6).)

Petitioner was convicted of these charges on or about July 18, 2018, and he was sentenced to terms of 45 months imprisonment, 31 months imprisonment, and 10 months imprisonment respectively for these offenses, with all sentences ordered to run concurrently. (*See* Sica Decl., ¶ 10; Vick Decl., Ex. F at 1-4.) According to the stipulated amended indictment filed in that case, Petitioner committed the third-degree assault and first-degree criminal mistreatment offenses against the same child who was 10 years or younger at the time of the offenses. (Sica Decl., ¶ 10 n.1; Vick Decl., Ex. F at 8.) Petitioner committed the unlawful use of a weapon offense against a separate victim on a separate date. (*See* Sica Decl., ¶ 10 n.1; Vick Decl., Ex. F at 8.)

On January 27, 2021, Petitioner was released from criminal custody into ICE custody and was transferred to the NWIPC where he was served with a NTA charging him with removability under INA § 237(a)(2)(C) (8 U.S.C. § 1227(a)(2)(C)) for having been convicted of a firearms offense. (Sica Decl., ¶ 11; Vick Decl., Ex. G (Dkt. # 11-7).) ICE subsequently filed an additional charge of removability under INA § 237(a)(2)(A)(ii) (8 U.S.C. § 1227(a)(2)(A)(ii)) based on Petitioner's convictions for two crimes involving moral turpitude, *i.e.*, his 2018 convictions for first-degree criminal mistreatment and unlawful use of a weapon. (Sica Decl., ¶ 14; Vick Decl., Ex. H (Dkt. # 11-8).) Given the nature of the charges of removability, Petitioner has been mandatorily detained under 8 U.S.C. § 1226(c). (Sica Decl., ¶ 14.)

At a bond hearing before an immigration judge ("IJ") on February 16, 2021, Petitioner withdrew his pending request for a custody redetermination because he wanted to seek counsel.

REPORT AND RECOMMENDATION
PAGE - 3

(Sica Decl., ¶ 12.) Petitioner subsequently obtained counsel but did not renew his request for a custody redetermination before an IJ. (*Id*.) On February 17, 2021, ICE conducted a custody redetermination pursuant to the class action order in *Fraihat v. ICE,* 445 F. Supp. 3d 751 (C.D. Cal. Apr. 20, 2020) and ICE's COVID-19 Pandemic Response Requirements, and determined that Petitioner's continued detention was necessary because he presented a danger to the community. (Sica Decl., ¶ 13.)

During removal proceedings, an IJ sustained the charges of removability under INA § 237(a)(2)(C) and INA § 237(a)(2)(A)(ii), pretermitted Petitioner's application for cancellation of removal, and ordered Petitioner removed to Mexico. (Sica Decl., ¶ 15.) Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA") and, on December 13, 2021, the BIA dismissed the appeal, upholding the IJ's decision sustaining the charge of removability under INA § 237(a)(2)(A)(ii) and pretermitting the application for cancellation of removal.[1] (Sica Decl., ¶ 16; Vick Decl., Ex. I (Dkt. # 11-9).)

On December 28, 2021, Petitioner filed a petition for review of the BIA's final order of removal and a motion for a stay of removal with the United States Court of Appeals for the Ninth Circuit. *See Murillo-Chavez v. Garland*, Case No. 21-1422 (9th Cir.). The Ninth Circuit issued a temporary stay of removal, and a briefing schedule was established. *See id*., Dkt. ## 2, 6. The Government filed a brief opposing Petitioner's motion to stay removal on February 15, 2022, and on August 19, 2022, the Ninth Circuit granted Petitioner's motion and issued a revised briefing schedule. *Id*., Dkt. ## 11, 15. Petitioner's opening brief is currently due October 18, 2022, and the Government's answering brief is due December 19, 2022. *Id*., Dkt. # 15.

---

[1] Petitioner did not challenge on appeal the IJ's decision that he was removable under INA § 237(a)(2)(C) for having been convicted of a weapons offense. (*See* Vick Decl., Ex. K (Dkt. # 11-11).)

REPORT AND RECOMMENDATION
PAGE - 4

In March 2022, ICE provided Petitioner with a post-order custody review ("POCR"), even though such a review was not required because Petitioner's removal order was not yet final. (*See* Sica Decl., ¶ 20; Gov.'s Mot. at 6.) Petitioner, however, refused to meet with ICE for a POCR interview. (Sica Decl., ¶ 20.) ICE completed the POCR review on March 14, 2022, and thereafter served Petitioner with a notice to continue detention. (*See* Sica Decl., ¶ 20; Vick Decl., Ex. J (Dkt. # 11-10).) Petitioner submitted his federal habeas petition to this Court for filing on March 14, 2022, though filing of the petition was delayed pending receipt of the filing fee. (*See* dkt. ## 1, 6.) On March 15, 2022, Petitioner filed a motion to reopen with the BIA, which DHS has opposed, and which remains pending at this time. (Sica Decl., ¶¶ 19, 21.)

### III.   DISCUSSION

Petitioner asserts in his federal habeas petition that he is currently detained under 8 U.S.C. § 1226(a), and not 8 U.S.C. § 1226(c), which mandates detention for certain categories of ICE detainees, and that his continued custody violates his due process rights. (Pet. at 1-4.) Petitioner requests that this Court order his release from custody or, in the alternative, order an individualized bond hearing. (*Id*. at 2.) The Government, in its return memorandum and motion to dismiss, argues that Petitioner's detention is lawful pursuant to § 1226(c) and comports with due process. (*See* Gov.'s Mot. at 3.)

#### A.   Statutory Basis for Petitioner's Detention

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of non-citizens, such as Petitioner, who are in removal proceedings.[2] 8 U.S.C. § 1226; *see also*

---

[2] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

*Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."). Section 1226(a) grants DHS the discretionary authority to determine whether a non-citizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the non-citizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory until removal proceedings have concluded. 8 U.S.C. § 1226; *Jennings v. Rodriguez*, 138 S.Ct. 830, 846-48 (2018). Section 1226(c) includes any non-citizen who "is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B).

Here, Petitioner was found to be removable for having committed offenses covered in § 1227(a)(2)(A)(ii) and § 1227(a)(2)(C). As such, Petitioner's detention is statutorily mandated by § 1226(c) until his removal proceedings have concluded. Petitioner argues that his immigration detention shifted from § 1226(c) to § 1226(a) after his removal order became administratively final, citing *Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008). (Pet. at 2-3.) However, the undersigned has previously concluded that *Casas-Castrillon* no longer remains good law in light of the Supreme Court's decision in *Jennings* because the two cases are clearly irreconcilable. *See e.g., Juarez v. Wolf*, 2021 WL 2323436, at *3 (W.D. Wash. May 5, 2021*), report and recommendation adopted*, 2021 WL 2322823 (W.D. Wash. June 7, 2021) (concluding that *Casas-Castrillon* is clearly irreconcilable with *Jennings*); *Djelassi v. ICE Field Office Director*, 434 F. Supp. 3d 917, 927-28 (W.D. Wash. 2020) (same).[3]

---

[3] The viability of *Casas-Castrillon* remains an open question in the Ninth Circuit and the issue is now pending in *Avilez v. Barr*, Case No. 20-16142 (9th Cir.).

REPORT AND RECOMMENDATION
PAGE - 6

Given this Court's previous analysis of *Casas-Castrillon*, the Court concludes that Petitioner's detention is governed by § 1226(c). As such, he is subject to mandatory detention until his removal proceedings have concluded, which includes a final ruling on his pending petition for review. Petitioner is therefore not entitled to release or a bond hearing on statutory grounds.

**B.  Due Process**

Even if authorized under Section 1226(c), Petitioner's continued detention must comport with due process. Petitioner argues that his detention has become prolonged and violates his due process rights, and that he is entitled to release or a bond hearing. (*See* Pet. at 1-2, 4.) The Government counters that Petitioner's continued mandatory detention is reasonable and comports with due process. (*See* Gov.'s Mot. at 7-15.)

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a due process challenge to § 1226(c). The Supreme Court explained that Congress drafted § 1226(c) to respond to the high rates of crime and flight by removable non-citizens convicted of certain crimes and held that "the Government may constitutionally detain deportable [non-citizens] during the limited period necessary for their removal proceedings." *Id.* at 518-21, 526. In so holding, the Supreme Court stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a definite termination point" that, in the vast majority of cases, resulted in detention of less than about five months. *Id.* at 529-30. Justice Kennedy's concurring opinion, which created the majority, reasoned that under the Due Process Clause, a non-citizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532.

Since *Demore*, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 256 (9th Cir. 2018). Overwhelmingly, district courts that have considered the constitutionality of prolonged mandatory detention—including the undersigned and other judges in this District—"agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" *Martinez v. Clark*, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoting *Sajous v. Decker*, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018), and collecting cases); *see also Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) (Robart, J.) ("[U]nreasonably prolonged detention under [8 U.S.C.] § 1225(b) without a bond hearing violates due process."); *Djelassi*, 434 F. Supp. 3d at 923-24 (granting habeas petition and ordering bond hearing for noncitizen whose mandatory detention had become unreasonably prolonged).

In cases involving § 1226(c), judges in this District have utilized the test articulated in *Martinez*, 2019 WL 5968089, at *6-7, to determine whether prolonged mandatory detention has become unreasonable. Under the *Martinez* test the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

REPORT AND RECOMMENDATION
PAGE - 8

*Id.* at *9 (citing, *inter alia*, *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018)). These factors are derived from the Supreme Court's decisions in *Demore* and *Zadvydas v. Davis*, 533 U.S. 678 (2001), and pre-*Jennings* circuit court cases holding, as a matter of constitutional avoidance, that § 1226(c) implicitly authorizes detention for only a reasonable amount of time. *See Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016), *vacated in light of Jennings*, 2018 WL 4000993 (1st Cir. May 11, 2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 222-23 (3d Cir. 2011), *abrogated by Jennings*, 138 S. Ct. 830; *Ly v. Hansen*, 351 F.3d 263, 269-70 (6th Cir. 2003), *abrogated by Jennings*, 138 S. Ct. 830; *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated as moot*, 890 F.3d 952 (11th Cir. 2018).[4]

Consistent with the prior decisions of judges in this District, the Court applies the *Martinez* factors to assess whether Petitioner's § 1226(c) detention has become unreasonable.

### 1. Length of Detention to Date

The length of detention is the most important factor. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9; *Sajous*, 2018 WL 2357266, at *10 (citing *Zadvydas*, *Sopo*, and *Diop*). The longer mandatory detention continues beyond the "brief" period authorized in *Demore*, the harder it is to justify. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9 (nearly 13-month detention weighed in favor of granting a bond hearing); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963-64 (D. Minn. 2019) ("Although there is no bright-line rule for what constitutes a reasonable length of detention, Petitioner's [12-month] detention has lasted beyond

---

[4] The government also analyzes Petitioner's detention under the three-factor test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which "requires considering (1) the private interest affected, (2) the government's interest, and (3) the value added by additional or substitute procedural safeguards in the situation before the court." *Banda*, 385 F. Supp. 3d at 1106 (citing *Mathews*, 424 U.S. at 334). For the reasons explained by Judge Robart in *Banda*, the Court declines to apply the *Mathews* test in this case. *See id.* at 1106-07.

REPORT AND RECOMMENDATION
PAGE - 9

the 'brief' period assumed in *Demore*."); *Sajous*, 2018 WL 2357266, at *10 ("[D]etention that has lasted longer than six months is more likely to be 'unreasonable', and thus contrary to due process, than detention of less than six months.").

At the time Petitioner filed his petition, he had been detained for an ongoing period of 13 months. (*See* Pet. at 1.) Petitioner's detention has extended to approximately 19 months during the pendency of this proceeding. As such, the Court finds the first factor weighs in Petitioner's favor.

### 2. *Likely Duration of Future Detention*

The Court next "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. As previously noted, Petitioner's petition for review was filed with the Ninth Circuit on December 28, 2021. According to the Ninth Circuit's public website, oral argument in a civil case may not be set for 12-20 months from the time the notice of appeal was filed, or approximately 9-12 months from the completion of briefing, "[i]f briefing isn't delayed." *See* U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last accessed 8/29/2022). And, following argument, the Court of Appeals may take 3 months to a year to decide the case. *See id*. A review of the docket in Petitioner's pending appeal reveals that briefing on the appeal will not be complete until January 2023. *See Murillo-Chavez*, Case No. 21-1422, Dkt. # 15. It thus appears that Petitioner could potentially be facing two years or more of additional time in custody. This factor therefore weighs in Petitioner's favor as well.

REPORT AND RECOMMENDATION
PAGE - 10

### 3. *Criminal History*

Under the third and fourth factors, the Court reviews the length of detention compared to Petitioner's criminal sentence and the nature of his crime. *Martinez*, 2019 WL 5968089, at *9; *Cabral*, 331 F. Supp. 3d at 262. The relevance of these factors is that they are suggestive of whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile. *See Cabral*, 331 F. Supp. 3d at 262. Petitioner received an aggregate sentence of 86 months confinement for his most recent convictions, though the sentencing court ordered the sentences to be served concurrently resulting in an effective sentence of only 45 months. While Petitioner's time in immigration detention could approach the time he actually spent in prison on his most recent offenses by the time his immigration proceedings conclude, it is important to note that Petitioner's criminal history includes multiple crimes against children as well as a weapons offense. These factors weigh significantly in favor of the Government.

### 4. *Conditions of Detention*

Under the fifth factor, the Court considers the conditions of Petitioner's detention at the facility where he is currently detained. *Martinez*, 2019 WL 5968089, at *9. "The more that the conditions under which the [non-citizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) (quoted source omitted). The parties do not present evidence regarding the conditions at the NWIPC, and therefore the Court finds this factor to be neutral.

### 5. *Delays in Removal Proceedings*

Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by the petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at *10. "Petitioner is entitled to raise legitimate defenses to

REPORT AND RECOMMENDATION
PAGE - 11

removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Liban M.J.*, 367 F. Supp. 3d at 665 (citing *Hernandez v. Decker*, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition.")).

Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [non-citizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [non-citizen] must be released because of the length of his [or her] incarceration." *Ly*, 351 F.3d at 272; *see also Sopo*, 825 F.3d at 1218 ("Evidence that the [non-citizen] acted in bad faith or sought to deliberately slow the proceedings in hopes of obtaining release cuts against the [non-citizen]."). Thus, this factor weighs against finding detention unreasonable when a non-citizen "has 'substantially prolonged his stay by abusing the processes provided,'" but not when he "simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)); *see also Campbell v. Barr*, 387 F. Supp. 3d 286, 297 n.7 (W.D.N.Y. 2019). With respect to the government, "[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable. . . . Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous*, 2018 WL 2357266, at *11 (citing *Demore* and *Reid*). Neither party alleges that the other has engaged in deliberate delay tactics. The Court therefore finds these factors, on balance, are neutral.

REPORT AND RECOMMENDATION
PAGE - 12

### 6. *Likelihood Removal Proceedings Will Result in a Final Order of Removal*

Finally, the Court considers "the likelihood that the removal proceedings will result in a final order of removal." *Liban M.J.*, 367 F. Supp. 3d at 965. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10; *Sajous*, 2018 WL 2357266, at *11. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous* and *Demore*). "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid*, 819 F.3d at 400-500).

Petitioner is pursuing an appeal of his removal order before the Ninth Circuit. The record does not contain sufficient information to enable the Court to make a prediction of the likelihood of Petitioner's success, but in the absence of any evidence Petitioner's appeal is frivolous or taken in bad faith, the court concludes this factor is neutral.

### 7. *Weighing the Factors*

As discussed above, two factors weigh in Petitioner's favor, two factors weigh in the Government's favor, and the remaining four factors are neutral. This Court is not persuaded that Petitioner's prolonged mandatory detention without a bond hearing has become unreasonable at this juncture. In this Court's view, the factors favoring the Government, *i.e.*, those that relate to Petitioner's criminal history, outweigh those favoring Petitioner, *i.e.,* those that relate to the length of Petitioner's current, and possible future, detention. The Court therefore concludes that

Petitioner's detention does not violate due process at this point and that he is therefore not entitled to a bond hearing at this time.

IV.    CONCLUSION

For the foregoing reasons, this Court recommends that the Government's motion to dismiss (dkt. # 10) be GRANTED, and that Petitioner's federal habeas petition (dkt. # 6) be DENIED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 23, 2022**.

DATED this 30th day of August, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge